IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN F. BLOSS, in his capacity as court-appointed Receiver for Bryce Aaron Rhodes, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV315 |
| | ) | |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This action arises after a state court entered a $2.8 million consent judgment against Bryce Aaron Rhodes for catastrophic injuries he caused to Kourtnie Schober in 2020 when he drove his car into the motorcycle she was riding, causing a below-the-knee amputation of her left leg. GEICO, who insured the car Bloss was driving, offered the full policy limit to Schober in compensation. After considering the offer and countering, Schober then revoked her offer. The state court action followed.

John F. Bloss, as the court-appointed receiver for Rhodes, now sues Government Employees Insurance Company ("GEICO") for breach of contractual duty to settle and covenant of good faith and fair dealing (Count One), unfair and deceptive trade practices for failure to settle (Count Two), and bad faith refusal to pay insurance claim (Count Three), all violations of North Carolina law.[1] *See generally* Complaint, Docket Entry 1.

This matter is before the Court on GEICO's motion to dismiss the Complaint, Docket Entry 9. Because Bloss fails to plausibly allege any cause of action against GEICO, the Court should grant GEICO's motion to dismiss but deny its motion for attorneys' fees.

---

[1] The matter is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332. The parties both apply North Carolina law to the claims, and the Court concurs.

## I.   Facts

On August 9, 2020, in Harnett County, North Carolina, Rhodes drove his Ford passenger vehicle into a Harley-Davidson motorcycle driven by Schober, causing her serious bodily injury including below-the-knee amputation of her left leg. Compl. ¶¶ 32–39.   At all relevant times, GEICO insured Rhodes through his parents' motor vehicle liability policy ("Policy"). *Id.* ¶¶ 11–30, 40.

Soon after the wreck, Schober hired attorney Tyler J. Stiles to pursue a negligence claim against Rhodes, and, on August 18, Stiles sent a letter to GEICO notifying the company that he represented Schober in relation to the car accident. *Id.* ¶¶ 41–42.

Thus began the settlement negotiations:

- August 20: Stiles received a letter from Jenna Bryant in the GEICO Claims Department, acknowledging receipt of Stiles' letter and referencing the policyholder, driver, date of loss, and claim number assigned to Schober's claim. *Id.* ¶ 43; Ex. 5 to Compl. (Letter from Bryant to Motorcycle Law Group Raleigh Office (August 20, 2020)).  Bryant also asked Stiles to schedule a time when she could obtain a recorded statement from Schober. Ex. 5.

- September 11: Stiles wrote Bryant seeking release of GEICO's policy limits applicable to Schober's claims and consenting to release of Schober's medical records and participation in mediation. Compl. ¶ 44; Ex. 6 to Compl. (Letter from Stiles to Bryant (Sept. 11, 2020)).

- September 15: Bryant wrote Stiles and, citing North Carolina General Statute Section 58-3-33, requested certain consents and information from Schober. Compl. ¶ 45; Ex. 7 to Compl. (Letter from Bryant to Motorcycle Law Group Raleigh Office (Sept. 15, 2020)).

- "By September 18, . . . GEICO had had ample time and information to fully investigate Schober's claim to its satisfaction" and "needed no additional information on liability, damages, or causation to determine whether to settle the claim or how much to offer." *Id.* ¶ 46.  Specifically, GEICO knew Rhodes' car was covered under the Policy, Schober had suffered "serious, debilitating and permanent injury," Rhodes' liability was clear, Schober's damages far exceeded $100,000, and "Rhodes would surely face catastrophic liability" "if GEICO did not settle Schober's claim." *Id.* ¶ 47.

- September 18: Bryant and Stiles spoke over the telephone, and, that day, Bryant wrote Stiles to confirm their conversation "regarding the offer of the policy limits of $100,000 to settle [Schober's] case" and the separate arrival of the settlement check. Compl. ¶ 48; Ex. 8 to Compl. (Letter from

2

Bryant to Motorcycle Law Group Raleigh Office (Sept. 18, 2020)). Bryant explained that the "settlement payment is forwarded to you, in trust, with the specific understanding and agreement that you will act as the disbursing agent for all payments to be made from these funds including all applicable liens . . . and will hold us and our insured harmless from any failure to pay these liens." Ex. 8 (attaching for signature a Release in Full of All Claims). Further, "[i]n consideration for your agreement to make such payments, we are placing only your client's name and your name on the settlement payment in order to facilitate disbursement." *Id.* But "[i]f you are not agreeable to serving as disbursing agent for all applicable liens, please return this payment to us within 10 days along with an itemized list of all applicable liens." *Id.* "We will then issue separate payments directly to the lienholders." *Id.*

- In consideration for the settlement check, the Release required Schober to release the insureds and GEICO from "any and every claim, demand, right or cause of action, of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof." Ex. 8 at 5; *see also* Compl. ¶ 49.

- September 21: GEICO issued a check for $100,000 payable to

Schober and Stiles's law firm. Compl. ¶ 52; Ex. 9 to Compl. (Check).

- December 16: Stiles wrote Bryant acknowledging receipt of GEICO's offer to tender the policy limits and requesting a copy of the Policy's declarations page, a copy of any other applicable policies' declarations pages, a notarized affidavit by the insured of no additional insurance, and a notarized affidavit by Rhodes of no insurance. Compl. ¶ 53; Ex. 10 to Compl. (Letter from Stiles to Bryant (Dec. 16, 2020)).

- December 16: Bryant wrote Stiles, acknowledged receipt of his letter, enclosed a certification of the policy limits, and informed him that she had "forwarded [his] request for affidavits of no other insurance to [the] insureds and [would] advise [him] once [she] receive[d] a response." Compl. ¶ 54; Ex. 11 to Compl. (Letter from Bryant to Stiles (De. 16, 2020)).

- January 15, 2021: Bryant spoke with a member of Stiles' staff and confirmed that she was working on the affidavits. Compl. ¶ 55. But she ultimately never provided them. *Id.*

- January 19: Bryant wrote Stiles because the $100,000 check issued on September 18, 2020 had not yet been cashed and payment was going to void 180 days after the issue date. Compl. ¶ 56; Ex. 12

3

to Compl. (Letter from Bryant to Stiles (Jan. 19, 2021)). Bryant asked Stiles to call to discuss the check. Compl. ¶ 56; Ex. 12 to Compl.

- March 5: Stiles wrote Bryant, "GEICO offered to settle the Claim on terms contained in GEICO's letter dated September 18, 2020 and also in a proposed release form which GEICO enclosed with that letter. Ms. Schober rejects GEICO's terms. However, Ms. Schober offers to settle the Claim in exchange for GEICO's payment to her of $100,000 on [two conditions]." Compl. ¶ 57; Ex. 13 to Compl. (Letter from Stiles to Bryant (Mar. 5, 2021)). First, Schober would execute a release that Stiles revised and attached to his letter ("Revised Release" or "Version 2"), and, second, Stiles would act as the disbursing agent for any liens. Compl. ¶ 57; Ex. 13 to Compl. He asked Bryant to "notify [him] promptly by fax if GEICO agrees to the above conditions." Compl. ¶ 57; Ex. 13 to Compl.

- Version 2 of the Release removed GEICO as one of the releasees but left the insureds, removed several general releasees (such as "firms or corporations"), deleted the prohibition on Schober's using the release and settlement agreement as a defense or estoppel in any action, removed the agreement that Schober would indemnify releasees from any and every claim, and added Schober's

agreement to satisfy all liens and subordinate interests against the settlement funds and to indemnify GEICO for any losses it may suffer from Schober's failure to pay those liens or claims. *Compare* Ex. 8 *with* Ex. 13. *See also* Compl. ¶ 58.

- Neither Schober nor Stiles "invite[d] GEICO or anyone acting on its behalf to discuss or negotiate the terms of Version 2." *Id.* ¶ 60.

- March 11: Attorney Christopher Skinner emailed Stiles on behalf of GEICO because an adjuster had called him about the changes Stiles made to the release. Compl. ¶ 67; Ex. 14 to Compl. (Mar. 11, 2021)). Skinner asked Stiles, "Any insight on your changes that I can provide them? Thanks." Compl. ¶ 67; Ex. 14 to Compl (Email from Skinner to Stiles (Mar. 11, 2021)).

- March 12: Stiles responded, directed Skinner to the integration clause in paragraph 3 of Version 2 of the release, and stated that "the document needs to 'speak for itself[]' and any explanation about what the terms mean would seem to be pointless at best, but possibly even confusing or misleading. . . ." Compl. ¶ 68; Ex. 15 to Compl. (Email from Stiles to Skinner (Mar. 12, 2021)).

- March 15: Skinner emailed Stiles again, "I am not sure how limiting the explanation of certain terms helps the document become more clear. . . . So I guess the

fundamental question is what harm is on your client if they sign the document as is? Maybe that would help me understand where you are coming from. Thanks." Compl. ¶ 70; Ex. 16 to Compl. (Email from Skinner to Stiles (Mar. 15, 2021)). Stiles responded, "I simply don't think any further discussion about the terms of Version 2 of the covenant is necessary. The question is whether GEICO accepts the terms Ms. Schober offered in the demand letter dated March 5. Please let me know." Comp. ¶ 71; Ex. 17 to Compl. (Email from Stiles to Skinner (Mar. 15, 2021)).

Meanwhile, Stiles learned that the insureds had sold their home and purchased an expensive motor home. Compl. ¶ 75. Schober could not have "take[n] [the insureds'] home via execution," but "she could potentially execute on the motor home." Compl. ¶ 77. Were she to settle "for GEICO's $100,000, Schober might be foregoing the collection of other available proceeds." *Id.*

On March 20, Stiles returned the $100,000 to GEICO. *Id.* ¶ 82; Ex. 18 to Compl. (Priority Mail Envelope). The next day, attorney David Stradley wrote Bryant on Schober's behalf and revoked all settlement offers. Compl. ¶ 83; Ex. 19 to Compl. (Letter from Stradley to Bryant (Mar. 21, 2021)). Stradley explained,

> As GEICO is well-aware, Ms. Schober's damages are

catastrophic. . . . I recently became aware that [the insureds] may have personal assets that may permit Ms. Schober to recover damages above and beyond the amount of GEICO's insurance policy. Therefore, on behalf Ms. Schober, I hereby revoke and withdraw Ms. Schober's offer to settle which was contained in Tyler Stiles's letter to you dated March 5, 2021. All settlement offers in this matter are hereby revoked and withdrawn. . . . Ms. Schober intends to pursue her claims in court."

Compl. ¶ 82; Ex. 19 to Compl.

On March 29, Schober filed suit in Harnett County Superior Court against Bryce Rhodes. Compl. ¶ 86; Ex. 2 to Compl. (Complaint in 21CVS665). On October 7, 2022, the court entered a consent judgment against Rhodes for $2.8 million. Compl. ¶ 89; Ex. 22 to Compl. (Consent J., 21CVS665).

II.    Procedural Posture

Bloss filed suit against GEICO in this District on June 27, 2024, asserting the same claims he is currently pursuing against GEICO. *See* 1:24CV536, Compl., Docket Entry 1. The Court granted GEICO's motion to dismiss and dismissed the Complaint without prejudice on April 9, 2025. *See* 1:24CV536, Mem. Op. & Order, Docket Entry 16.

On April 25, 2025, Bloss filed the instant action against GEICO, again

alleging breach of contractual duty to settle and covenant of good faith and fair dealing, unfair and deceptive trade practices for failure to settle, and bad faith refusal to pay insurance claim.

Bloss added allegations to this Complaint to attempt to address the issues with the Complaint in 1:24CV536 that the Court identified. For example, he now also alleges:

- "Upon information and belief," GEICO drafted its release "principally for GEICO's protection" and "regularly forced releases . . . on claimants who lacked the knowledge or bargaining power[,]" Compl. ¶ 50,

- "GEICO had no legitimate reason to include itself as a released party . . . because Schober, a stranger to GEICO's insurance contract, had no rights against GEICO[,]" *id.* ¶ 51,

- "At no point did Schober or her counsel invite GEICO or anyone else acting on its behalf to discuss or negotiate the terms of Version 2[,]" *id.* ¶ 60,

- "Upon information and belief, industry standards as well as GEICO's own claims handling standards required it to pay extra attention to, and act with increased diligence toward, some or all of the following, . . . a demand requiring use of a specific release; . . . [a] claim with

catastrophic injuries, such as amputation; and . . . [a] claim with clearly insufficient policy limits in relation to the damages[,]" *id.* ¶ 61,

- "Upon information and belief, industry standards as well as GEICO's own claims handling standards required it seek an extension of time with a defined deadline to evaluate any claim with catastrophic damages[,]" *id.* ¶ 62,

- "Upon receipt of Stiles's March 5, 2021 demand, . . . GEICO also knew: . . . Schober owed [the insureds] and/or GEICO no duty whatsoever;" "the March 5, 2021 demand could be revoked at any time;" "it had the opportunity to essentially extinguish, on behalf of [the insureds], a liability of millions of dollars for a mere $100,000;" "the demand represented an excellent deal for [the insureds];" and "failing to accept the demand forthwith was gambling with Rhodes's financial future[,]" *id.* ¶ 63,

- "[A] reasonable insurer . . . would have realized . . . that the Release contained onerous, over-reaching, and unreasonable terms" and "acting in good faith and exercising reasonable diligence would have immediately accepted the [March 5, 2021] demand[,]" *id.* ¶¶ 64, 65,

- "Instead of diligently and immediately accepting Schober's demand or paying an attorney to

6

review Version 2 to determine whether it adequately protected [the insureds], GEICO instead sought free services from one of its panel defense attorneys to try to get Stiles to explain Version 2, in derogation of the 'full integration clause' in both the [original release] and Version 2, or to negotiate the terms," *id.* ¶ 66,

- "Upon information and belief, as shown by her conduct in adjusting Schober's claim, Bryant was improperly trained, supervised, or both, because . . . a properly trained and supervised adjuster would have understood [the insureds] faced millions of dollars in liability . . ., understood that Version 2 adequately protected [the insureds], or, if she did not, would have engaged . . . counsel to evaluate Version 2[,] . . . informed Stiles that she needed time to evaluate Version 2 [and ask the offer be open for a defined period of time,] . . . understood that GEICO had no leverage in settlement negotiation once Schober made a demand within policy limits using Version 2[, and] . . . understood that the March 5, 2021, demand was extremely favorable to [the insureds] and needed to be accepted forthwith without question or delay[,]" *id.* ¶ 72,

- "GEICO knew that if it refused to settle the Schober Claim that Schober would obtain a judgment against Rhodes for an amount in excess of the limits of liability stated in the Policy[,]" *id.* ¶ 73,

- "No legitimate reason prevented GEICO from accepting the March 5, 2021, demand before March 20, 2021[,]" *id.* ¶ 79,

- "At no point while the March 5, 2021, demand remained open did GEICO inform Rhodes of the demand or the Version 2 document[,]" *id.* ¶ 80, and

- "GEICO's delay and failure to accept the March 5, 2021, [demand] was, at best, mere stubbornness, and, at worst, a bad faith delay," *id.* ¶ 81.

GEICO has moved to dismiss the Complaint, arguing that the additional allegations are conclusory and, therefore, Bloss has still failed to state any claim against GEICO. *See generally* GEICO's Mem. of Law in Supp. of Mot. to Dismiss & Mot. for Attorneys' Fees, Docket Entry 10 ("Br. in Supp."). In addition, GEICO alleges that the claims are time-barred. *Id.* at 14–15.

III. <u>Statute of Limitations</u>

While a motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," the district court may evaluate the merits "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair*,

7

*Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (emphasis and alteration omitted).

Such is the case here. Both parties agree that the statute of limitations under North Carolina law is three years for a breach of contract claim and four years for unfair and deceptive trade practices. *See* N.C. Gen. Stat. §§ 1-52, 75-16.2. They dispute when the actions accrued, and the answer is dispositive.

According to GEICO, each cause of action accrued on March 21, 2021. Br. in Supp. at 14–15; GEICO's Reply in Supp. of its Mot. to Dismiss at 11–12, Docket Entry 13 ("Reply"). As a result, the applicable statute of limitation bars each claim because Bloss did not file the instant action until April 25, 2025. Br. in Supp. at 15.

Bloss contends that his claim for breach of duty to settle and presumably his claim for unfair and deceptive trade practices accrued on October 7, 2022, when the Harnett County Superior Court entered the $2.8 million judgment against Rhodes. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss & Mot. for Attorneys' Fees at 7–10, Docket Entry 12 ("Resp. in Opp'n"). Therefore, he argues, his suit is timely. *Id.* at 10.

Relying on treatises because of apparent lack of guidance from North Carolina courts on the accrual of a claim for breach of a duty to settle, Bloss cites 14A Couch on Insurance § 206:4 and Bad Faith Actions Liability & Damages § 3:36 (2d ed.) in

support of his argument. *Id.* at 7–8. *See Romfo v. Scottsdale Ins. Co.*, No. 5:17-CV-422-D, 2017 WL 6611511, at *2 (E.D.N.C. Dec. 27, 2017) ("If there are no governing opinions from [the state's highest] court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and the practices of other states.") (internal quotation and citation omitted).

"A cause of action generally accrues when the right to institute and maintain a suit arises." *Bear Invs., LLC v. Penn Nat'l Mut. Ins. Co.*, No. 5:19-CV-529-FL, 2023 WL 7391490, at *3 (E.D.N.C. Nov. 8, 2023) (quoting *Register v. White*, 599 S.E.2d 549, 554 (N.C. 2004)).

To state a claim for breach of contract, a plaintiff must allege (1) "a valid contract existed between the parties," (2) the "defendant breached the terms thereof," (3) "the facts constituting the breach," and (4) resulting damages. *Grich v. Mantelco, LLC*, 746 S.E.2d 316, 319 (N.C. Ct. App. 2013).

As one insurance law treatise states,

> An insurer breaches its duty to settle at the time it refuses to accept a reasonable settlement demand within the monetary limits of the policy. Despite this breach, the insured has no cause of action until he or she sustains damage in the form of an excess judgment or a settlement funded by the insured's own money[.] . . . Thus, the cause of action for

breach of the insurer's duty to settle generally does not accrue until an excess judgment is entered against the insured.

3 Law and Practice of Insurance Coverage Litigation § 43:15 (July 2025 update)); *see also* 14A Couch on Ins. § 206:4 (3d ed).

In a similar vein, the district court in *Romfo* analyzed North Carolina court decisions to predict how the North Carolina Supreme Court would rule on the issue. The court determined that the "right to institute and maintain the action against" the insurer for breach of its duties under the insurance policy, specifically to the defendant and indemnify, arose years after judgment was entered "when the writ of execution was returned unsatisfied[.]" 2017 WL 6611511, at *3–*4 (citing *Taylor v. Green*, 87 S.E.2d 11, 13 (N.C. 1955)).

Persuasive authority suggests that the cause of action for breach of contractual duty to settle did not accrue until, at the earliest, October 7, 2022 when the $2.8 million judgment was entered against Rhodes. Therefore, the statute of limitations does not bar this claim.

A plaintiff asserting a claim for unfair and deceptive trade practices must allege "'(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[].'" *Triad Prop. Invs., LLC v Ohio Sec. Ins. Co.*, No. 1:25-cv-243-SDT-JEP, 2025 WL 2164212, at *6 (M.D.N.C. July 30, 2025) (Thacker, J.) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000)).

As alleged, GEICO's unfair and deceptive trade practice was its failure to settle (and related conduct). Just as the breach of contractual duty to settle does not accrue until the insured is harmed, it follows that a cause of action for unfair and deceptive trade practices for failure to settle also would not accrue until the insured is injured by that conduct. As noted above, the court entered the consent judgment against Rhodes on October 7, 2022. Bloss filed the instant action well before the four-year statute of limitations would have run.

Therefore, in an abundance of caution, the Court finds that none of Bloss's claims are likely time-barred.

Bloss also argues that, even if the statutes of limitation would bar the instant action, the filing of the complaint in 1:24CV536 tolled the statutes of limitation and, thus, the instant action would be timely. Resp. in Opp'n at 10 (citing *Long v. Fink*, 342 S.E.2d 557, 559 (N.C. Ct. App.

1986)).[2] In its Reply, GEICO does not address this argument.

North Carolina recognizes "that equitable tolling . . . may serve to extend a statute of limitations." *Aikens v. Ingram*, 524 F. App'x 873, 882 (4th Cir. 2013) (unpublished) (predicting what the North Carolina Supreme Court would hold). "[A]n action's limitations period remains tolled during the pendency of a properly initiated suit" if the defendant had timely notice of the claims, the delay in the litigation did not prejudice the defendant, and the plaintiff has acted diligently. *Blackmon ex rel. Canady v. Holder*, No. 5:23-CV-578-FL, 2024 WL 4156826, at *4 (E.D.N.C. Sept. 11, 2024) (applying *Aikens*, 524 F. App'x at 882-83; citing *B-W Acceptance Corp. v. Spencer*, 149 S.E.2d 570 (N.C. 1966)); *Long*, 342 S.E.2d 557; *Lee ex rel. Shelton v. City of Fayetteville*, No. 5:16-cv-759-FL, 2017 WL 2274970 (E.D.N.C. May 24, 2017)).

Applying *Aikens* (and thus North Carolina law) here, the instant action would be timely due to the tolling of the statutes of limitations during the pendency of the 1:24CV536 cause of action. The complaints assert the same claims against the same defendant, and Bloss filed the instant action sixteen days after the court dismissed the first action without prejudice. Therefore, GEICO had timely notice of the claims, it is not prejudiced by the delay, and Bloss was diligent in filing the first action well before the statutes of limitation ran and swiftly filed the instant action. Therefore, from June 27, 2024 to April 9, 2025, the statutes of limitation would be tolled, and, as a result, the instant action is timely.[3]

Although the claims are not time-barred, none meet the requisite pleading standard, either, as set forth below.

### IV. Discussion

#### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).

---

[2] "The tolling of a state statute of limitations in a diversity case is strictly a substantive matter of state law." *Haislip v. Riggs*, 534 F. Supp. 95, 98 (W.D.N.C. 1981) (applying North Carolina law).

[3] Bloss also forecast that, in the event the Court finds the instant action time-barred, he will file a motion pursuant to Rule 60(b)(6) under the Federal Rules of Civil Procedure asking for relief for "'any other reason that justifies relief.'" Resp. in Opp'n at 11 (quoting Fed. R. Civ. P. 60(b)(6)).

A plaintiff is not required to prove its case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

On a motion to dismiss, courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Generally, conclusory allegations based *solely* 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Capital LLC*, 615 F. Supp. 3d 379, 384 (M.D.N.C. 2022) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir.

2009) (unpublished) and citing other cases).

> A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

*Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)).

"Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting a motion to dismiss into a motion for summary judgment." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019), *appeal voluntarily dismissed*, (internal and other citations omitted).

### B. Bloss's claim for breach of express contractual provision fails as a matter of law.

Bloss alleges that GEICO breached its contractual duty to settle "by failing to settle the Schober Claim within the stated limits of the Policy." Compl. ¶ 103.[4] The claim focuses on Schober's March 5, 2021 offer to settle and GEICO's failure to accept that offer before Stiles and Stradley, acting on behalf of Schober, revoked it approximately two weeks later. *See, e.g.*, *id.* ¶¶ 100, 102.

It is a "well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986), *cited in Martin v. Nautilus Ins. Co.*, 629 F. Supp. 3d 333, 337 (M.D.N.C. 2022). To state a claim for breach of contract, a plaintiff must allege (1) "a valid contract existed between the parties," (2) the "defendant breached the terms thereof," (3) "the facts constituting the breach," and (4) resulting damages. *Williams v. Williams*, 746 S.E.2d 319, 319 (N.C. Ct. App. 2013).

Bloss argues that the Complaint alleges GEICO rejected Stiles' March 5, 2021 offer or allowed it to expire and, therefore, breached its express obligation to settle Schober's claim – a claim for bodily injury or property damage for which Rhodes became legally responsible. *See generally* Resp. in Opp'n at 11–16. *See also* Compl. ¶ 94 (quoting the Policy's term requiring GEICO to "settle or defend, as [it] consider[s] appropriate, any claim or suit asking for [bodily injury or property damages for which any insured becomes legally responsible]").

Although Bloss focuses this claim on the March 5, 2021 offer, GEICO's settlement efforts did not begin and end in March 2021. Nearly six months earlier, in September 2020, GEICO issued Schober's settlement check *for the policy limit* of $100,000. And on March 5, 2021, when Stiles notified GEICO of Schober's rejection and counteroffer, Skinner, as counsel for GEICO, made repeated efforts to better understand the terms of the Revised Release. Stiles did not engage. Five days later, Stiles returned the settlement check. The following day, Stradley withdrew Schober's settlement offer.

To that end, GEICO argues that Schober's "withdrawing of the settlement demand and returning the $100,000 previously transmitted" "precluded [GEICO] from responding to the [March 5, 2021] demand." Br. in Supp. at 9. Further, it did not refuse "to pay after recognition of a valid claim by GEICO" and "remained willing to pay limits and protect its

---

[4] Bloss also alleges in Count One that GEICO breached the implied covenant of good faith and fair dealing. That claim shares the same elements as a claim for bad faith failure to settle, which Bloss alleges as Count Three. Therefore, those two claims are analyzed together below.

insured." *Id.* And the Complaint does not allege otherwise. Perhaps GEICO would have failed to settle in breach of the Policy, but that is speculation, not a fact pled in the Complaint. Before it could breach, Schober's counsel withdrew the offer.

Bloss has not plausibly alleged that GEICO breached an express term of the Policy. The Court should dismiss this portion of Count One.

C. Bloss's claims for breach of the covenant of good faith and fair dealing and bad faith refusal to settle fail as a matter of law.

As part of Count One, Bloss alleges that GEICO "failed to exercise reasonable diligence in accepting the March 5, 2021, demand" and "willfully chose not to accept the demand in order to obtain more favorable terms for itself for which it had no legitimate need." Compl. ¶ 102. Count Three similarly alleges GEICO's bad faith refusal to pay the insurance claim. *Id.* ¶¶ 122–32.

The elements of these two claims are the same. *Triad Prop. Invs., LLC v. Ohio Sec. Ins. Co.*, 1:25-cv-00243-SDT-JEP, 2025 WL 2164212, at *12 (citing *Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 315 (E.D.N.C. 2019)). *See also In re Caceres*, No. 18-80776, 2023 WL 2543713, at *46 (Bankr. M.D.N.C. Feb. 27, 2023) (citing 14A Couch on Insurance § 203:7 (3d rev. ed. 2022))).

"In the insurance context, a claim for breach of the covenant of good faith and fair dealing [as well as a claim for bad faith] requires three elements: (1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." *Triad Prop. Invs., LLC*, 2025 WL 2164212, at *11 (citing *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 314).

"Bad faith does not arise where there is an 'honest disagreement' regarding the value of a claim" or where there is an "'innocent mistake.'" *Essentia Ins. Co. v. Stephens*, 530 F. Supp. 3d 582, 603 (E.D.N.C. 2021) (citing *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181 (N.C. Ct. App. 1993), *aff'd*, 435 S.E.2d 71 (N.C. 1993), and *Dailey v. Integon Gen. Ins. Corp.*, 331 S.E.2d 148 (N.C. Ct. App. 1985)). An insurer's conduct is aggravated or outrageous when the conduct is fraudulent, malicious, willful or wanton, or violates North Carolina General Statute § 58-63-15(11). *In re Caceres*, 2023 WL 2543713, at *47.

With respect to insurance policies, North Carolina law provides an automobile insurer the right to settle without an insured's consent. *Cash v. State Farm Mut. Auto. Ins. Co.*, 528 S.E.2d 372, 378–79 (N.C. Ct. App. 2000) (citing N.C. Gen. Stat. § 20-279.21(f)(3) and noting that the policy language allowing State Farm to "settle or defend" any claim as it considers "appropriate" aligns with

Case 1:25-cv-00315-DAB-JGM    Document 16    Filed 05/20/26    Page 13 of 26

the statute), *aff'd*, 538 S.E.2d 569 (N.C. 2000).

Nevertheless, this "exclusive contractual authority to settle a claim as [the insurer] sees fit . . . 'must be exercised in a reasonable manner based upon good faith and fair play.'" *In re Caceres*, 2023 WL 2543713, at *46 (quoting *Nationwide Mut. Ins. Co. v. Pub. Servs. Co. of N.C., Inc.*, 435 S.E.2d 561, 564 (N.C. Ct. App. 1993)).

> The policy provision giving the insurer the right to effectuate settlement was put in for the protection of the insured as well as the insurer. . . . [A]n insurer owes a duty to its insured to act diligently and in good faith in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy.

*Alford v. Textile Ins. Co.*, 103 S.E.2d 8, 12 (N.C. 1958). *See also Cash*, 528 S.E.2d at 379 (noting that "any settlement must be in good faith" and defining "good faith" as the "'absence of malice, . . . [h]onesty of intention, and freedom from knowledge or circumstances which ought to put [one] upon inquiry'") (quoting

BLACK'S LAW DICTIONARY 693 (6th ed. 1990)).

> An insurer "must give at least as much consideration to the interest of the insured as it does its own interest[;]" if presented with a situation in which recovery in excess of policy limits "is substantially likely," the insurer "has a duty implied by law to settle within policy limits" when afforded the opportunity to do so "in order to protect the insured from a gamble by the insurer on which only the insured could lose."

*In re Caceres*, 2023 WL 2543713, at *46 (quoting 14A Couch on Ins. § 203:13 (3d rev. ed 2022)).

> 1. The Complaint does not allege that GEICO refused to pay after recognition of a valid claim.

GEICO argues that "[a]t no point did [it] refuse a demand, reject a settlement demand, allow a time-limited demand to expire, or refuse to accept a term proposed by Ms. Schober." Br. in Supp. at 8. Nor did it refuse "to pay after recognition of a valid claim." *Id.* at 9.[5] Indeed, Bloss does not dispute that he alleges

---

[5] In response to GEICO's argument that it never refused to settle Schober's claim, Bloss says that "[c]onstructive refusal, through unjustified delay or failure to accept a reasonable offer, suffices." Resp.

in Opp'n at 16 (citing *Dailey*, 331 S.E.2d at 155–56). While that may be true in *Dailey*, as explained below, those facts are far different than the facts Bloss alleges here.

GEICO issued Schober a check for $100,000, the policy limits, within two months of the accident. And, despite his arguments to the contrary, *see* Resp. in Opp'n at 16, he does not allege GEICO ever rejected or refused a demand. Thus, he fails to allege facts that plausibly state that GEICO refused to pay Schober's claim after it recognized the claim's validity.

Even if Bloss had sufficiently alleged that GEICO refused to pay a valid claim, he must also plausibly allege that GEICO's refusal was in bad faith: in other words, the refusal was not based on legitimate, honest disagreement.

  2. The Complaint does not plausibly allege bad faith.

GEICO argues that Bloss failed to allege bad faith because "'[t]he linchpin of insurer liability on a bad faith claim . . . is unreasonable delay in offering up its policy limits.'" Br. in Supp. at 10 (quoting *Columbia Ins. Co. v. Waymer*, 860 F. App'x 848, 853 (4th Cir. 2021) (unpublished) (reviewing the district court's findings) (quotations omitted)). And, according to GEICO, it was acting reasonably when it was reviewing Schober's Revised Release at the time she revoked her demand. *Id.*; *see also*

*id.* at 9-10 (quoting *Columbia Ins. Co. v. Reynolds*, 438 F. Supp. 3d 614, 621 (D.S.C. 2020) ("A carrier's duty to protect the interests of its insured does not require a carrier to immediately accede to a demand for settlement before it has had reasonable time to conduct an investigation."), *aff'd sub nom.*, *Waymer*, 860 F. App'x 848.

Bloss argues, in sum, that the following pled facts constitute lack of due diligence: 1) failure to provide the affidavits confirming no other insurance coverage; 2) getting "free services from one of its panel defense attorneys"; and 3) seeking clarity on Schober's counteroffer rather than immediately accepting it.[6] *See* Resp. in Opp'n at 12 (citing Compl. ¶¶ 55, 66–67, 69–70, 79–80). Bloss cites no case law in support of these propositions. And, indeed, Fourth Circuit case law (interpreting South Carolina's similar statutory framework) permits insurers "a reasonable time to conduct an investigation." *See Columbia Ins. Co.*, 438 F. Supp. 3d at 621.

Here, the Complaint alleges that, in September 2020, *less than two months after the accident*, GEICO recognized the validity of the claim and the insured's liability and issued

---

[6] Bloss argues Skinner "was apparently oblivious to the danger Schober's claim posed to [the insured], yet GEICO did nothing to correct that." *See* Resp. in Opp'n at 12, without citation to the corresponding Complaint paragraph in support. Likewise, Bloss argues Skinner

"focused on persuading Schober's counsel to adopt GEICO's preferred release," *see id.*, and cites to Paragraph 70 of the Complaint, which only reflects that Skinner asked Stiles a question regarding the revised settlement.

Schober a check for the policy limit. Three months later, in December 2020, Stiles wrote Bryant acknowledging receipt of GEICO's offer and requested a copy of the Policy's declarations page, other applicable policies' declarations, and affidavits of the insured of no other insurance. *That same day*, Bryant responded with a certification of policy limits and forwarded the request for affidavits to the insureds. The next month, in January 2021, Bryant called Stiles' law firm to confirm she was working on the affidavits. She also wrote Stiles because he had yet to cash the settlement check and payment was going to void 180 days after issuance. She asked Stiles to call her to discuss the check.

In March 2021, nearly three months later—almost six months after GEICO issued the settlement check—Stiles wrote Bryant to reject GEICO's settlement and propose revised terms. *Six days later*, Skinner, on GEICO's behalf, emailed Stiles for clarification about the Revised Release.[7] He did so *again four days later* after Stiles refused to discuss it. And again Stiles would not engage.

Thus, Bloss's allegations are far from the facts in *Dailey*, which he cites for

support. 331 S.E.2d at 155. There, "after arbitrarily rejecting plaintiff's well documented claim[,] defendant took no steps at all to check plaintiff's estimated construction costs for several months and then selected an unqualified builder to do the checking, and then waited another month before making [] settlement offer[s] . . . that had no reasonable basis and . . . disregarded the actual utility and value of the destroyed items." *Id.*

In *Guessford v. Penn. Nat'l Mutual Casualty Ins. Co.*, 918 F. Supp. 2d 453, 466 (MD.N.C. 2013), this court found the plaintiff sufficiently pled bad faith refusal to settle where the defendant recognized the claim as valid but "continued to either not evaluate Plaintiff's claim or willfully refused to make a settlement offer after being made aware of the nature of Plaintiff's claim." The "refusal was not based on an honest disagreement over the value of [the] claim [because the value] was resolved through the arbitration proceeding." *Id.* Instead, the defendant's refusal to make a settlement offer was based on its "willful failure to investigate [the] claim." *Id.* These egregious facts are not the facts that Bloss alleges here.

---

[7] In his Response, Bloss cites to paragraph 50 of the Complaint, among others as noted above, to show GEICO's alleged complete failure to act. Paragraph 50 alleges "[u]pon information and belief" GEICO drafted the release for its protection and

regularly forced the release on claimants with less knowledge and bargaining power." Assuming these facts are peculiarly within GEICO's control and the facts are true, the issue here is whether GEICO committed a tort against Schober, not other claimants.

16

Bloss does allege that "[u]pon information and belief" industry standards and GEICO's policies required it to seek an extension of time to assess a catastrophic claim. Compl. ¶ 62 *cited in* Resp. in Opp'n. Because industry standards are not peculiarly within GEICO's control, Bloss cannot support that portion of the allegation upon information and belief. But considering Stiles' request was a prompt response, rather than a specific deadline date, even if GEICO's standards required it to request more time, its failure to do so under these alleged facts is not sufficient to show lack of diligence.

In addition, Bloss argues bad faith based on GEICO's request for release of all claims. *See* Resp. in Opp'n at 12 (citing Compl. ¶¶ 49—51). *See also id.* at 13—15 (citing *Dailey*, 331 S.E.2d at 148; *Barickman v. Mercury Cas. Co.*, 206 Cal. Rptr. 3d 699 (Cal. Ct. App. 2016); *Harter v. Pains Ins. Co.*, 579 N.W.2d 625 (S.D. 1998); *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343 (N.D. Ga. 2014)).

The parties do not cite, and the Court has not located, a case finding, under North Carolina law, that an insurer's insistence that it be released from liability in exchange for an agreement to settle is bad faith or unfair. However, in a footnote, the Superior Court of Massachusetts has said, "By seeking a release of itself upon the payment of its insured's benefits to the claimants, [the insurer] was in effect seeking to have the insurance coverage afforded to its insured . . .

cover its own liability to plaintiff for any statutory violations. . . . [T]his court believes that an insurer's attempt to settle its own claims against itself by the payment of its insured's liability benefits is . . . a violation of the statute and an unfair or deceptive act or practice" under Massachusetts law. *Sterlin v. Com. Ins. Co.*, 2009 WL 323455, at *9 n.3 (Mass. Sup. Ct. Feb. 2, 2009).

However, in *Sterlin*, the insurer refused to offer the policy limits without full release after unreasonably "in essence closing its eyes to the available evidence" about the accident at issue. *See id.* at *9. Here, GEICO conducted a reasonable investigation, offered the policy limits and, critically, *never rejected* the counteroffer before Schober chose to revoke the offer.

As for GEICO's lack of a prompt response to Stiles' demand, Stiles' request that GEICO respond "promptly" is a reasonable period of time within which to accept or reject the Revised Release. *See In re Caceres*, 2023 WL 2543713, at *49 ("[T]he reasonableness of a given deadline depends upon the complete circumstances of the case.") (citing 14A Couch on Ins. § 203:15; 1 New Appleman Insurance Bad Faith Litigation § 2.03(2d ed. 2022)). *Cf.* N.C. Gen. Stat. § 58-63-15(11)(b) (listing an insurance company's failure "to acknowledge and act reasonably promptly upon communications"). Moreover, GEICO had long since accepted the

insured's liability and the validity of the claim so it only needed to investigate the language of the Revised Release. *See* Resp. in Opp'n at 13–14 (noting that "GEICO had already decided to pay policy limits") (citing Compl. ¶¶ 48, 52). Even so, the allegations do not show GEICO acted in bad faith after receiving Stiles' request.

In *Barickman*, which Bloss cites, less than two months after a car accident, the insurer offered the victims the insured's policy limits, and two months later, the victims accepted the policy limits offer, returned the signed releases on the forms the insurer provided, and added a sentence to the recitation of payment that was "essentially superfluous." 206 Cal. Rptr. 3d at 702, 705. "[B]ased upon the totality of the evidence, the language did not constitute a nonacceptance of the policy limits . . . ." *Id.* at 705. However, the insurer then spent months attempting to persuade the victims to sign the original release. *Id.* at 704. The court found that the insurer initially acted in good faith when it offered the policy limits but was unreasonable when it failed to accept the release or timely counter with a revised release, among other reasons. *Id.* at 709–10; *see also id.* at 708 ("[T]he ultimate test is whether the insurer's conduct was unreasonable under all of the circumstances.").

Here, unlike the "essentially superfluous" addition to the release that was not even a nonacceptance of

the policy limits in *Barickman*, Stiles' revisions changed the legal rights and obligations of the parties. Further, an adjuster was assessing the Revised Release and sought guidance from Skinner who then requested clarification from Stiles, all within days of GEICO's receipt of the counteroffer. And unlike in *Barickman*, Bloss does not allege that GEICO ignored a directive from the insured to settle the claim so that it could attempt to have Schober agree to the original release.

Bloss's other cited cases are equally inapposite. In *Harter v. Plains Insurance Co., Inc.*, 579 N.W.2d 625 (S.D. 1998), the insurer acted in bad faith when it intervened in a trial between the insured and the tortfeasor to dispute the tortfeasor's liability and to have the insured's claim dismissed on the merits even though the insurer determined the tortfeasor's liability four years earlier. *See also* Resp. in Opp'n at 15 (citing *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1351–52 (N.D. Ga. 2014) (denying the insurer's motion for summary judgment on the bad faith claim where the victim proposed a limited liability release in its time-limited demand, the insurer did not convey the offer until after the deadline despite knowing for a month of the forthcoming demand, and the insured agreed to the limited liability release).

Bloss does not sufficiently allege that GEICO acted in bad faith.

3. The Complaint does not allege aggravating or outrageous conduct.

Finally, even had Bloss sufficiently alleged the first two elements of these claims, he must also plausibly allege that GEICO's actions were aggravating or outrageous, in other words fraudulent, malicious, wanton, and the like.

Directing attention to paragraph 127 of the Complaint, which GEICO contends contains the only allegations of aggravating or outrageous conduct, GEICO argues that the allegations about its claims handlers are "false and unsubstantiated." Br. in Supp. at 10-11 (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 684). At the 12(b)(6) stage, though, the falsity of the accusations is not before the Court.

But GEICO also contends that the exhibits Bloss attaches to the Complaint "disprove[]" his allegations. *Id.* at 11. GEICO issued the check for the policy limit and expected Schober would deposit it. *Id.* And Bloss's allegations that the claims handler "'did not understand the Policy, North Carolina law on the duty to settle, the catastrophic nature of Schober's claim, the huge financial risk to Rhodes and Barclay, and/or which terms were necessary for the release of a bodily injury claims[] and which terms were unimportant" are belied by GEICO's issuance of the settlement check in the full amount of

the policy limit. *Id.* (quoting Compl. ¶ 127(a)).

Bloss relies on the same arguments and case law to support GEICO's bad faith and aggravating or outrageous conduct. *See* Resp. in Opp'n at 14–16.

This court found that the *Guessford* plaintiff sufficiently alleged the defendant's conduct was aggravated where the settlement offer was "substantially lower than Plaintiff's documented medical expenses," the defendant refused "to evaluate Plaintiff's claim for a year and a half with no valid excuse," the defendant conditioned "payment of the arbitration award on Plaintiff releasing Defendant from all liability," and "Defendant compelled Plaintiff to institute litigation and arbitration proceedings despite being provided with [Plaintiff's] medical information." 918 F. Supp. 2d at 466–67.

Bloss does not allege this type of aggravating conduct. In addition to the conclusory nature of the allegations, and despite Bloss's argument that "GEICO's pattern of delay, self-dealing, and lack of diligence amount to bad faith refusal to settle and aggravating conduct," Resp. in Opp'n at 14 (capital letters removed for clarity), the factual allegations belie the claim. *See Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp 3d 531, 538 (E.D.N.C. 2023) (dismissing the bad faith claim and

19

noting that "[a]fter using judicial experience" the complaint alleged conduct contradicting allegations of bad faith).

Because Bloss has not sufficiently alleged that GEICO breached its duty of good faith and fair dealing or acted in bad faith, the Court should dismiss the portion of Count One that alleges a breach of the covenant of good faith and fair dealing and should dismiss Count Three.

>    D. Bloss's claim for unfair and deceptive trade practices fails as a matter of law.

Bloss claims GEICO committed unfair and deceptive trade practices when it failed to settle with Schober (Count Two). Specifically, he alleges that GEICO violated North Carolina General Statute § 58-63-15(11)(b) by "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" when it:

- "wast[ed] over two valuable weeks questioning the terms of Version 2, a document that was perfectly adequate to protect [the insureds,]"

- "[t]o the extent GEICO was unsure about the effect of Version 2, wasted two valuable weeks without engaging counsel to analyze Version 2[,]"

- "fail[ed] to consult [the insureds] about Version 2[,]"

- "delay[ed] acceptance of an extremely favorable demand for [the insureds] to attempt to negotiate terms that were more favorable for GEICO[,]" and

- "fail[ed] to request from Stiles an extension of time with a specific deadline for the evaluation of his demand and/or Version 2[.]"

Compl. ¶ 112.

In addition, Bloss alleges that GEICO violated North Carolina General Statute § 58-63-15(11)(f) when it did "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" by:

- "not accepting Schober's reasonable settlement demand – which was extremely favorable to the insureds in that it extinguished millions of dollars of liability for pennies on the dollar – during the fifteen days it remained open;" and

- "attempting to negotiate terms that were even more favorable to GEICO instead of accepting terms that provided ample protection for the insured and GEICO[.]"

*Id.* ¶ 113.

20

Bloss also alleges that GEICO otherwise violated North Carolina General Statute § 75-1.1 when it failed to follow industry standards and its own claims handling standards, assigned a catastrophic claim to an improperly trained or supervised adjuster, failed to consult counsel to evaluate the revised release, failed to settle in good faith, and put its own interests ahead of the insureds'." *Id.* ¶ 115.

North Carolina law prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1 ("UDTPA"). A plaintiff asserting a violation of Section 75-1.1 must allege: "'(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[].'" *Triad Prop. Invs., LLC*, 2025 WL 2164212, at *6 (quoting *Gray*, 529 S.E.2d at 681); *Ireifej v. Travelers Cas. Ins. Co. of Am.*, No. 1:20CV739, 2021 WL 4133948, at *5 (M.D.N.C. Sept. 10, 2021), *aff'd*, 2022 WL 17663502 (4th Cir. 2022).

"'[A] practice is deceptive if it has the tendency to deceive' and 'is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Ireifej*, 2021 WL 4133948, at *5 (citing *Gray*, 529 S.E.2d at 681, quoting *Marshal v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). Thus, "[e]gregious or aggravating circumstances must be alleged before the provisions of the

[UDTPA] may take effect." *Ellis v. La.–Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (citation omitted).

In the insurance industry, North Carolina General Statute § 58-63-15(11) provides "examples of conduct . . . support[ing] a finding of unfair or deceptive practices." *See Gray*, 529 S.E.2d at 683. This is because "[a]n insurance company that engages in [acts in Section 58-63-15(11)] also engages in conduct that embodies the broader standards of [Section] 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* (addressing § 58-63-15(11)(f)). *See also Country Club of Johnston Cnty., Inc. v. U.S. Fidelity & Guar. Co.*, 563 S.E.2d 269, 279 (N.C. Ct. App. 2002) (citing *Gray* and extending the holding to all subsections of § 58-63-15(11)).

Bloss alleges as relevant here that these prohibited acts include "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," N.C. Gen. Stat. § 58-63-15(11)(b), and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," N.C. Gen. Stat. § 58-63-15(11)(f). Such conduct violates Section 75-1.1 as a matter of law. *Gray*, 529 S.E.2d at 683.

GEICO argues that this claim fails because it relies on the same factual

21

allegations as the breach of contract claim. Br. in Supp. at 13 (citing *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc.*, 669 F. Supp 3d 531).

"'It is clearly established in North Carolina that a plaintiff may maintain both a breach of contract claim and an unfair and deceptive trade practices claim.'" *In re Caceres*, 2023 WL 2543713, at *42 (quoting *In re Charlotte Commercial Grp., Inc.* , No. 01-52684C-11W, 2003 WL 1790882, at *3 (M.D.N.C. Mar. 13, 2003)). But even an intentional breach of contract is insufficient to state a claim of unfair or deceptive practices. *Branch Banking & Tr. Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992). Therefore, "[t]o maintain both claims, a plaintiff must allege substantial aggravating circumstances.'" *In re Caceres*, 2023 WL 2543713, at *43 (quoting *In re Charlotte Commercial Grp. Inc.*, 2003 WL 1790882, at *3).

Next, GEICO contends that the claim for an alleged violation of Section 58-63-15(11)(b) fails because its response to the revised release "was reasonably prompt under the circumstances as the statute of limitations for Ms. Schober's claims did not expire for another two years." Br. in Supp. at 13-14 (citing *Labudde v. Phoenix Ins. Co.*, No. 7:21-CV-197-FL, 2022 WL 2651846, at *8 (E.D.N.C. July 8, 2022); *Federated Mut. Ins. Co., Inc. v. William Trull Co.*, 838 F. Supp. 2d 370, 423 (M.D.N.C. 2011) (finding substantial evidence at a bench trial that the insurer "promptly responded

to communications" and those "responses were reasonably prompt under the circumstances, taking into account both the investigation and nature of the requests").

GEICO also argues that Bloss does not sufficiently allege a violation of subsection (f) because GEICO issued Schober the settlement check for the policy limits "[w]ithin a month of the accident" and, thus, *did* attempt to settle the underlying claim. *Id.* at 14 (citing *Neshat v. Nationwide Mut. Fire Ins. Co.*, No. 5:20-CV-664-D, 2021 WL 2168906 (E.D.N.C. May 27, 2021)).

With respect to a violation of subsection (b), "[c]ourts in the state have eschewed a bright line deadline to constitute unreasonable delay . . . ." *Labudde*, 2022 WL 2651846, at *8 (citing *First Protective Ins. Co. v. Rike*, 516 F. Supp. 3d 513, 533-34 (E.D.N.C. 2021) ("concluding a delay in communication of '54 days is not enough, by itself to show an unfair settlement practice'"); *Meadlock v. Am. Fam. Life Assur. Co.*, No. COA11-1009, 2012 WL 2891079, at *7 (N.C. Ct. App. July 17, 2012) ("explaining that a four-month delay in communication, in and of itself, was not unreasonable and that further evidence was needed to determine whether that delay was reasonable or not")).

In *Labudde*, the plaintiff alleged that the insurance company promised to send him a roof estimate in three days but did not do so until eighty days

22

later and promised to send him information over a weekend but did not do so until three weeks later. *Id.* In addition, the plaintiff followed up on his communications with the insurance company after sixteen days, another time after six days, and another time after eleven days. *Id.* He also alleged a nineteen-day period of no communication. *Id.* But the court found that "the complaint does not evidence the type of complete lapse in communication other courts have focused on, *see, e.g.*, *Guessford*, 918 F. Supp. 2d at 457–58, 465, or responses that were unreasonably prompt under the circumstances, given that, on the complaint, the alleged delays in communication occurred in the wake of a natural disaster with a statewide impact." *Id.*

As described above, Bloss alleges that starting in August 2020 when Stiles first notified GEICO of his representation of Schober GEICO responded to Stiles' communications within days, if not the same day, and, at other times, initiated communications with him. And, six days after the March 5 offer, on March 11, Skinner emailed Stiles. He did so again on March 15 after Stiles' March 12 response. Under the circumstances, including Stiles' request that GEICO respond promptly to the March 5 offer and Stiles' refusal to clarify the Revised Release, Bloss does not plausibly alleged GEICO violated Section 58-63-15(11)(b).

Regarding Bloss' Section 58-63-15(11)(f) claim, "[a]n insurance company that engages in the act or practice of not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Gray*, 529 S.E.2d at 683 (citing N.C. Gen. Stat. § 58-63-15(11)(f), internal quotation and citation omitted).

In *Gray*, the North Carolina Supreme Court found that there was sufficient evidence to support a jury's finding that the defendant violated that subsection by not attempting in good faith to settle promptly claims in which liability had become reasonably clear. *Id.* at 684. After a hurricane caused extensive damage to the plaintiffs' motel, they timely filed a claim under their policy with the defendant. *Id.* at 678. The defendant's claims adjuster assessed the cause of the damage, estimated damage amounts, and recommended settlements for each of the motel's buildings that sustained damage. *Id.* at 678-79. Despite corroboration for the assessment, the defendant did not pay the claims, asked the adjuster to withdraw, and assigned a co-adjuster whose much lower damages recommendation the defendant offered plaintiffs. *Id.* at 679. The plaintiffs rejected the offer. *Id.* In affirming the jury's verdict, the court

23

found the defendant's "apparently arbitrary rejection" of the first adjuster's damages estimates and "ready acceptance" of the other adjuster's lower estimates "exacerbated" the defendant's actions. *Id.*

Bloss argues that GEICO violated Section 58-63-15(11)(f) by "doing nothing," but the allegations of the Complaint say otherwise. As detailed above, GEICO had already issued the settlement check for the policy limit and was reviewing the Revised Release when Stiles and Stradley revoked Schober's offer. And, as GEICO notes, Bloss does not allege that Stiles or Stradley revoked Schober's offer because of any delay on GEICO's part. *See* Reply at 4–5.

And nothing else alleged about GEICO's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to otherwise satisfy Section 75-1.1. Bloss's arguments to the contrary are conclusory without any factual support similar to those in *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc.* There, the insured alleged unfair and deceptive trade practices based on the defendant's purported failure "to promptly respond to its information, investigate claims, and otherwise resolve the dispute." 669 F. Supp. 3d at 537. But the plaintiff's "complaint state[d] that Nationwide inspected the property multiple times, adjusted estimates based on

Waterford's submissions, made payments, and provided Waterford with its reasoning and reports that outline the factual basis for its decisions and responses to Waterford's submissions." *Id.* The claim failed as a matter of law, and the court dismissed it.[8] *Id.* The Court should do the same here.

###### E. GEICO is not entitled to attorneys' fees.

GEICO argues that Bloss must pay its attorneys' fees because this action is frivolous and malicious. Br. in Supp. 15-17 (citing N.C. Gen. Stat. § 75-16.1). North Carolina law affords a judge discretion to "allow a reasonable attorney fee . . . to be taxed as part of the court costs and payable by the losing party" in an action for unfair and deceptive trade practices "upon a finding by the presiding judge that . . . [t]he party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2).

"A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]." *Blyth v. McCrary*, 646 S.E.2d 813, 819 n.5 (N.C. Ct. App. 2007) (internal quotation and citation omitted). "A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *Id.* (internal quotation and citation omitted). "Maliciousness can develop during

---

[8] The court also found that the other allegations merely stated a breach of

contract, not unfair and deceptive trade practices. 669 F. Supp. 3d at 537.

the course of litigation if a party persists after discovering that his claim is meritless." *Laschkewitsch v. Legal & Gen. Am., Inc.*, No. 5:15-CV-251-D, 2017 WL 4976442, at *2 (E.D.N.C. Nov. 1, 2017), *aff'd*, 725 F. App'x 252 (4th Cir. 2018) (unpublished).

In *Laschkewitsch*, after awarding summary judgment in the defendant's favor, the court determined that the defendant was entitled to attorney fees under Section 75-16.1. *Id.* at *2. The plaintiff had lost "on nearly identical claims in two previous cases," and "in each of those cases, the court concluded that [the plaintiff's] claims were frivolous." *Id.* The plaintiff's claims were also malicious because they were "wrongful and done intentionally without just cause or excuse" after the plaintiff defrauded the insurance company, sued the insurance company "to obtain the fruits of his fraud," "persisted in forcing [the insurance company] to defend a claim he knew was frivolous, stonewalled discovery, and filed a myriad of meritless motions." *Id.* Thus, the plaintiff's conduct fell "squarely within section 75-16.1(2)[.]" *Id.*

Here, when the Court dismissed Bloss's first action against GEICO in 1:24CV536, the Court did so without prejudice because Bloss had not amended that complaint or sought leave to do so. *See* Mem. Op. & Order at 20–21, Docket Entry 16. The Court warned, though, that its dismissal without prejudice "should [not] be

construed as an invitation to initiate meritless litigation . . . ." *Id.* at 21 n.9.

In the instant action, Bloss added allegations to address the failings of those allegations in his earlier Complaint. *Compare, e.g.*, Compl. ¶ 90(a)–(c), Docket Entry 1 (1:24CV536) *with* Compl. ¶¶ 112(a)–(e), 113(a)–(c), Docket Entry 1 (the instant matter).

Under these circumstances, dismissal of these claims for failure to state a claim does not mean the suit was frivolous and malicious. *See Cincinnati Ins. Co. v. Dynamic Dev. Grp., LLC*, 336 F. Supp. 2d 552, 566 (M.D.N.C. 2004) ("Although the Court granted Cincinnati summary judgment on [the defendant's bad faith and unfair and deceptive trade practices claims] because they were weak both legally and factually, they simply were not so frivolous as to justify a departure from the normal rule that a litigant bears his own attorneys' fees."), *aff'd*, 154 F. App'x 378 (4th Cir. 2005) (unpublished).

As noted above, Bloss did not amend his Complaint in the first action, so the instant Complaint is only his second attempt to meet the pleading standard. And, in so doing, he paid heed to the Court's previous finding that this claim lacked sufficient supporting facts. Therefore, his pleading, while unsuccessful, was neither frivolous nor malicious. The Court should deny GEICO's request for attorneys' fees.

25

## V.  Conclusion

**IT IS HEREBY RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** GEICO's motion to dismiss and motion for attorneys' fees, in that GEICO's motion to dismiss the Complaint should be granted and its motion for attorneys' fees should be denied.

**IT IS FURTHER RECOMMENDED** that the Court **DISMISS THIS ACTION WITH PREJUDICE**, as this is the plaintiff's second action against GEICO for the same claims arising from the same events and both complaints have failed to allege facts sufficient to state a claim.

JoAnna Gibson McFadden
United States Magistrate Judge

May 20, 2026

26